Everett VEAL, Appellant,

v.

**VETERANS LIFE INSURANCE COMPANY, Appellee.**

No. 9666.

Court of Appeals of Texas, Texarkana.

March 14, 1989.

Warren L. Eddington, Houston, for appellant.

Michael W. Mengis, Vinson & Elkins, Houston, for appellee.

CORNELIUS, Chief Justice.

Veterans Life Insurance Company declined to pay life insurance benefits under a policy it issued to Kenneth Veal because Veal failed to disclose in his application that he had been treated for high blood pressure and had been arrested for driving while intoxicated. Everett Veal, the beneficiary under the policy, sued to recover the benefits and now appeals from a summary judgment rendered by the trial court against him.

Kenneth Veal applied for a life insurance policy of $50,000.00 with Veterans Life on March 25, 1984. In the application he represented that he had never been arrested for reckless or drunken driving and that he had never been treated for or been told that he had high blood pressure. Veal died from multiple gunshot wounds on May 27, 1984.

The parties agree that the substantive law of Minnesota controls the disposition of this cause.[1] However, the procedural law of Texas will apply. *Penny v. Powell,* 162 Tex. 497, 347 S.W.2d 601 (1961).

In Veal's first four points of error he contends that summary judgment was improper because genuine issues of material fact exist which should be determined by a jury.

■ Under Texas rules, a motion for summary judgment must be denied unless the movant clearly establishes his right to it as a matter of law. *Wilcox v. St. Mary's University of San Antonio,* 531 S.W.2d 589 (Tex.1975); Tex.R.Civ.P. 166a. In deciding if a disputed material fact issue exists which will preclude summary judgment, evidence favorable to the nonmovant will be taken as true, *Cowden v. Bell,* 157 Tex. 44, 300 S.W.2d 286 (1957), and every reasonable inference raised by the evidence will be resolved in the nonmovant's favor. *Hudnall v. Tyler Bank and Trust Compa-*

*ny,* 458 S.W.2d 183 (Tex.1970). For a defendant to be entitled to summary judgment, he must show as a matter of law that at least one essential element of the claim is established against the plaintiff. When the essential element is one of fact, the defendant's summary judgment evidence on that element must be uncontradicted. *Gray v. Bertrand,* 723 S.W.2d 957 (Tex. 1987); *Gibbs v. General Motors Corporation,* 450 S.W.2d 827 (Tex.1970); *Manoogian v. Lake Forest Corp.,* 652 S.W.2d 816 (Tex.App.—Austin 1983, writ ref'd n.r.e.); Hittner & Liberato, *Summary Judgments in Texas,* 20 St. Mary's L.J. 243 (1989).

Both parties concede that the controlling statute is Minn.Stat.Ann. § 61A.11 (West 1986), which provides:

> In any claim upon a policy issued in this state without previous medical examination, ... the statements made in the application as to the age, physical condition, and family history of the insured shall be valid and binding upon the company unless willfully false or intentionally misleading.

In addition to being willfully false or intentionally misleading, the misrepresentation must be material if it is to void the policy. According to Minnesota law, materiality is not whether the misrepresentation was material to the cause of death, but whether it substantially affected the insurer's ability to make a reasonable decision to assume the risk of coverage. *Howard v. Aid Association for Lutherans,* 272 N.W. 2d 910 (Minn.1978). Thus, the question is whether Veterans Life conclusively established that Veal's misrepresentations were willful or intentional and that they affected its decision in issuing the policy.

A willfully false and intentionally misleading answer is one which is consciously made with a premeditated design to falsify the facts so as to lead the insurer to act when it otherwise would not. *Siemers v. United Benefit Life Insurance Company,* 75 N.W.2d 605 (Minn.1956); *Useldinger v. Old Republic Life Ins. Co.,* 377 N.W.2d 32

---

**1.** The application was made in Minnesota while the decedent was a Minnesota resident, and he died in Minnesota. The designated beneficiary is a Texas resident, and Veterans Life Insurance Company is authorized to do business in Texas.

(Minn.App.1985, review denied). The object of the Minnesota statute [2] was to make the question of intent all-important. *Schmidt v. Prudential Ins. Co. of America*, 190 Minn. 239, 251 N.W. 683 (1933).

Ordinarily, intent is a fact question that is inappropriate for determination by summary judgment. Minnesota, however, uses an objective rather than a subjective test to determine intent, and the Minnesota courts have found as a matter of law an intent to mislead when the record demonstrates that the decedent knew, but denied, that he had been treated for a health condition inquired about in the application, even though he may not have had a subjective intent to deceive. *Berthiaume v. Minnesota Mutual Life Ins. Co.*, 388 N.W.2d 15 (Minn.App. 1986, review denied); *Useldinger v. Old Republic Life Ins. Co.*, supra.

The application which Kenneth Veal signed asked, among other things:

HAVE YOU:

1. ___ Yes _X_ No Had a driver's license suspended or revoked ... or ever been arrested for reckless or drunken driving?

    ....

3. Ever been treated for or told by competent authority that you had ...:

    a. ___ Yes _X_ No High blood pressure, ...?

■ Undisputed summary judgment evidence shows that on July 28, 1977, physicians at Veteran's Administration Hospital recorded that Kenneth Veal had a blood pressure registering 130/104 and formally diagnosed him as suffering from high blood pressure. On July 28, 1977, Veal's doctor advised him to return on August 8 for further examination of his blood pressure. At that time, Veal's blood pressure was found to be 140/100 by the right arm, and 136/100 by the left arm. Veal told the doctors that he had a positive family history for high blood pressure. The fact that Veal was suffering from hypertension was discussed with him on August 8, 1977, and

he was placed on a reduced sodium diet. On October 20, 1977, Veal returned to the Veteran's Hospital complaining of left chest pain and was initially found to have a blood pressure of 130/98. Later that day, he was noted to have blood pressures of 140/108 and 138/106. On December 11, 1981, he was recorded to have a blood pressure of 126/90, and on December 31, 1981, his blood pressure was 140/110. On February 15, 1983, a little over a year before Veal applied for the insurance, he came to the Veteran's Medical Center in Minneapolis with a complaint which was recorded as follows:

> I want my blood pressure checked. I had it checked yesterday and it's back up. I was on medication and then I stopped taking it. BP yesterday 170/110.

The doctor noted that Kenneth Veal was thirty-five years old and gave a history of hypertension, and had gotten his blood pressure checked on February 14, 1983, when it was found to be 170/110. The doctor noted that Veal came in at that time seeking a prescription. The doctor further recorded that on February 15, 1983, Veal's blood pressure was 144/100 by the right arm and 146/100 by the left.

Additionally, summary judgment evidence establishes that Veal was arrested in New Mexico for driving while intoxicated on September 28, 1978, and again on November 13, 1978.

Since the uncontroverted summary judgment evidence establishes that Kenneth Veal had been told by medical personnel that he had high blood pressure and had knowingly been treated for the condition as late as approximately a year before applying for the insurance, willful misrepresentation is demonstrated as a matter of law. *Howard v. Aid Association for Lutherans*, supra; *Berthiaume v. Minnesota Mutual Life Ins. Co.*, supra; *Useldinger v. Old Republic Life Ins. Co.*, supra.

Additionally, we conclude that summary judgment evidence conclusively shows that Veal's misrepresentations affected the insurance company's decision to issue the

**2.** Minn.Stat.Ann. § 61A.11, previously 1 Mason   Min.St. 1927 § 3396.

policy. On this question, Veterans Life produced the testimony of Deborah Young. Mrs. Young was manager of Underwriting Technical for National Liberty Corporation, parent company of Veterans Life. She was an experienced underwriter, and she testified that Veal's two driving while intoxicated arrests and his treatment for high blood pressure would be significant considerations which, if known, would have substantially impaired and affected an insurer's decision to assume the risk of coverage. She further testified that a reasonably prudent insurance underwriter would not have insured Veal if they had known of both the driving while intoxicated arrests and the high blood pressure condition.

The only controverting summary judgment evidence on this point was the deposition testimony of Ann Palmer. She was also an underwriter for National Liberty Corporation. She stated that she personally would not have approved Veal for insurance had she known the truth of his medical condition, but she conceded that other underwriters might have a different opinion, and based on Veal's blood pressure numbers alone, she opined that probably seventy-five to ninety percent of persons with those numbers and who were otherwise good patients and good insurance risks would be accepted for insurance. However, there is no summary judgment evidence contradicting Mrs. Young's unequivocal statements that Veal's driving while intoxicated arrests would substantially affect an insurer's decision and that both the driving while intoxicated arrests and the high blood pressure readings would cause an underwriter to deny coverage. Thus, Veterans Life's uncontradicted summary judgment evidence establishes a defense to the action and summary judgment was properly rendered.

■ Veal contends that Mrs. Young's deposition testimony should not have been considered in support of the judgment because the testimony was not on file with the court at the time the motion for summary judgment was heard. Depositions are no longer filed with the court clerk. Tex.R.Civ.P. 206(2). Veterans Life attached copies of excerpts from Mrs. Young's deposition to its motion for summary judgment. Veal did not object to the form of the attachments, so any complaint about them was waived. Tex.R.Civ.P. 166a(e).

Finally, Veal alleges that the trial court erred in granting summary judgment because he did not receive the twenty-one days' notice of the hearing which is required by Rule 166a. He further contends that due to the lack of notice he was unable to present favorable affidavit testimony.

■ Rule 166a requires a full twenty-one days between the day of notice and the day of hearing. In computing the time, the day notice is given and the day of hearing should be excluded. *Sams v. N.L. Industries, Inc.,* 735 S.W.2d 486 (Tex.App.—Houston [1st Dist.] 1987, no writ). The motion for summary judgment was filed May 9, 1988, with a request in the transmittal letter for the hearing to be set on May 31. The court gave notice of the hearing to Veterans Life on May 17. Veal received notice on May 18. The transmittal letter requesting a hearing be set on May 31 should not be construed to be more than a mere request. Since Veal only received twelve days' notice of the hearing through notice from the court, Rule 166a was not complied with. However, we find that Veal waived the lack of notice when he accepted notice, appeared at the hearing, and failed to file affidavits in compliance with Tex.R.Civ.P. 166a(f). The twenty-one day notice requirement may be waived if the nonmovant receives notice, appears at the hearing, and does not file an affidavit under Rule 166a(f). *Chandler v. Escobar,* 604 S.W.2d 524 (Tex.Civ.App.—El Paso 1980, no writ). Veal received notice of the hearing and appeared at the hearing, but he did not file an affidavit pursuant to the rule, nor is there any indication in the record that he requested a continuance. Consequently, the failure to receive adequate notice was waived.

For the reasons stated, the judgment of the trial court is affirmed.