**COMPUTER ASSOCIATES
INTERNATIONAL, INC.,
Plaintiff–Appellee,**

v.

**ALTAI, INC., Defendant–Appellant.**

No. 1071, Docket 96–7875.

United States Court of Appeals,
Second Circuit.

Argued March 3, 1997.

Decided Sept. 25, 1997.

Susan G. Braden, Ingersoll & Bloch, Washington, DC, for Defendant–Appellant.

Stephen D. Kahn (Kenneth R. Parks, Peter Tu, Weil, Gotshal & Manges LLP, New York City, Michael A. McElroy, Computer Associates International, Inc., on the brief), for Plaintiff–Appellee.

Before: WALKER, McLAUGHLIN, Circuit Judges, and CHIN,* District Judge.

JOHN M. WALKER, Jr., Circuit Judge:

Defendant-appellant, Altai, Inc. ("Altai"), appeals from the order of the United States District Court for the Eastern District of New York (Dennis R. Hurley, *District Judge* ) denying its motion for an injunction against Computer Associates International, Inc. ("Computer Associates"). The issue on appeal is whether, under a theory of either claim or issue preclusion, a federal court should enjoin Computer Associates from pursuing an action claiming copyright infringement of a computer program in a French forum where Computer Associates has previously brought and lost a United States copyright infringement action based on the same computer program in federal court. Because we agree with the district court that *res judicata* and collateral estoppel are inapplicable under the circumstances of this case, we affirm.

## I. BACKGROUND

### A. *The United States Action*

In August of 1988, Computer Associates brought a copyright infringement and trade secrets misappropriation action in the Eastern District of New York against Altai, alleging that Altai had copied substantial portions of Computer Associates's ADAPTER computer program into Altai's OSCAR 3.4 and OSCAR 3.5 computer programs in violation of Computer Associates's United States copyright (the "United States action"). On August 9, 1991, following a trial, the district court found that Altai's OSCAR 3.4 computer program infringed Computer Associates's copyright, but held that OSCAR 3.5 was not substantially similar to the ADAPTER portion of Computer Associates's SCHEDULER program and therefore did not infringe Computer Associates's copyright. *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 775 F.Supp. 544, 560–62 (E.D.N.Y.1991) ("*Altai I* "). The district court dismissed Computer Associ-

ates's trade secrets claim as preempted by the federal Copyright Act. *Id.* at 565.

On December 17, 1992, the Second Circuit affirmed the district court's findings and judgment with regards to Computer Associates's copyright claims, but vacated the district court's preemption holding. *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 715, 720 (2d Cir.1992) ("*Altai II* "). On remand, the district court held that the trade secret claim was barred under Texas's two-year statute of limitations. *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 832 F.Supp. 50, 54 (E.D.N.Y.1993) ("*Altai III* "). Computer Associates appealed and the Second Circuit certified the issue to the Texas Supreme Court. *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 22 F.3d 32, 37 (2d Cir.1994) ("*Altai IV* "). On July 17, 1995, following a decision by the Texas Supreme Court, the Second Circuit issued a mandate affirming the district court's decision dismissing Computer Associates's trade secret claim. *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 61 F.3d 6, 8 (2d Cir.1995) (per curiam) ("*Altai V* ").

### B. *The French Action*

On January 23, 1990, Computer Associates and L'Agence pour la Protection des Programmes ("L'Agence") secured an *ex parte* order from the President of the Tribunal de Grande Instance in Bobigny, France, authorizing seizure of computer programs and business records from the offices of Altai's French distributor, la Societe FASTER, S.A.R.L. ("FASTER"), and enjoining FASTER from distributing or marketing its products. On February 2, 1990, a raid of FASTER's offices yielded five object code tapes of Altai software that contained OSCAR 3.5 code.

On February 15, 1990, one month before trial commenced in the United States, Computer Associates and L'Agence filed an action in the Tribunal de Commerce in Bobigny, France (the "Commercial Court"), against Altai and FASTER, charging violations of Computer Associates's French copyright (the "French action"). The French

---

* The Honorable Denny Chin of the United States District Court of the Southern District of New York, sitting by designation.

action centered on Computer Associates's allegations that Altai's importation and FASTER's distribution of OSCAR 3.5 in France violated Computer Associates's French copyright.

On October 1, 1991, Altai brought to the Commercial Court's attention the district court's holding in *Altai I* that its OSCAR 3.5 computer program did not violate Computer Associates's United States copyright and of the status of Computer Associates's appeal to the Second Circuit. Trial in the French action was postponed until September 10, 1992.

On September 16, 1992, Altai requested a stay of the French proceeding from the Tribunal de Grande Instance in Paris (the "Tribunal"), pending disposition of Altai's request for an *exequatur*, which would make the judgment in *Altai I* enforceable in France and allow Altai to introduce the judgment during the course of the French action in the Commercial Court. On October 22, 1992, the Commercial Court issued a stay. The *exequatur* was issued by the Tribunal in June 1993.

On May 14, 1994, Computer Associates moved to resume the French proceedings, and on November 25, 1994, trial in the Commercial Court began. On January 20, 1995, the Commercial Court found that Altai's OSCAR 3.5 program did not violate Computer Associates's rights under French copyright law. The Commercial Court specifically rejected Altai's argument that the United States decision in *Altai I* governed the disposition of the French action. The Commercial Court stated:

> [T]he United States decision was made with reference to United States law which, even if it is close to French law with regard to the protection of literary and artistic works, cannot be completely and immediately identified with French law without an analysis of the facts under French law. Jurisprudence on the matter of software protection is in flux, as the United States decision shows, with each case having to be considered individually....

On April 25, 1995, Computer Associates appealed the decision to the Paris Court of Appeals which scheduled briefing for May 13, 1998, and oral argument for June 18, 1998. Letter from Susan G. Braden, Counsel for Altai, Inc., to panel 1 (May 15, 1997).

### C. *Motion To Enjoin French Copyright Infringement Action*

On November 16, 1994, Altai moved in the Eastern District of New York to enjoin Computer Associates from continuing to litigate the action in France. On February 22, 1995, in light of the January 20, 1995 decision of the Commercial Court in its favor, Altai voluntarily withdrew this motion.

On April 11, 1995, after learning of Computer Associates's plan to appeal the decision of the Commercial Court, Altai reactivated its motion to enjoin Computer Associates from continuing to proceed with its French action. On June 17, 1996, the district court denied Altai's motion to enjoin Computer Associates from pursuing its French action. *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 950 F.Supp. 48, 54 (E.D.N.Y.1996) ("*Altai VI* "). This appeal followed.

## II. DISCUSSION

On appeal, Altai contends: (i) that Computer Associates's United States action for violation of its United States copyright precludes, under the doctrine of *res judicata,* its French action for violation of its French copyright; (ii) that, alternatively, Computer Associates is collaterally estopped from claiming that OSCAR 3.5 violates its French copyright because, in the United States action, judgment was rendered to the effect that OSCAR 3.5 does not violate Computer Associates's United States copyright; and (iii) finally, an antisuit injunction is appropriate, because comity concerns which caution against enjoining parties to a parallel foreign proceeding are inapplicable when, as here, judgment has already been rendered in the United States action. We address each contention in turn.

■ We review a district court's application of the principles of *res judicata* and collateral estoppel *de novo, see Valley Disposal, Inc. v. Central Vt. Solid Waste Management Dist.,* 31 F.3d 89, 93 (2d Cir.1994);

*Manning v. City of Auburn,* 953 F.2d 1355, 1358 (11th Cir.1992), accepting all factual findings of the district court unless clearly erroneous, *see Kaepa, Inc. v. Achilles Corp.,* 76 F.3d 624, 626 (5th Cir.1996).

## A. Res Judicata

█ Altai argues that the doctrine of *res judicata* bars Computer Associates from litigating its French action because Computer Associates could have raised its French copyright claims during the course of its United States action on its United States copyright claims. We disagree.

█ Under the doctrine of *res judicata,* a final judgment on the merits in an action "precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981).

> Simply put, the doctrine of *res judicata* provides that when a final judgment has been entered on the merits of a case, [i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

*SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1463 (2d Cir.1996) (quoting *Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983)). *Res judicata* therefore bars the subsequent litigation of any claims arising from the transaction or series of transactions which was the subject of the prior suit. *See Interoceanica Corp. v. Sound Pilots, Inc.,* 107 F.3d 86, 90 (2d Cir. 1997) (citing *Restatement (Second) of Judgments* § 24(b)(1982)); *Restatement (Second) of Judgments* § 24 cmt. a ("Claim, in the context of res judicata, has never been broader than the transaction to which it related.").

█ The burden is on the party seeking to invoke *res judicata* to prove that the doctrine bars the second action. *See Thomas v. New York City,* 814 F.Supp. 1139, 1148 (E.D.N.Y. 1993). Without a demonstration that the conduct complained of in the French action occurred prior to the initiation of the United States action, *res judicata* is simply inapplicable. As we have noted previously:

> With respect to the determination of whether a second suit is barred by res judicata, the fact that both suits involved essentially the same course of wrongful conduct is not decisive; nor is it dispositive that the two proceedings involved the same parties, similar or overlapping facts, and similar legal issues. A first judgment will generally have preclusive effect only where the transaction or connected series of transactions at issue in both suits is the same, that is where the same evidence is needed to support both claims, and where the facts essential to the second were present in the first.

*Interoceanica Corp.,* 107 F.3d at 91 (quoting *SEC v. First Jersey Sec.,* 101 F.3d 1450, 1463–64 (2d Cir.1996)).

In this case, Altai has failed to meet its burden of showing that the conduct which forms the basis of the French action—the unauthorized importation into France of Computer Associates's copyrighted work, and the subsequent distribution of the work in that country—occurred prior to August 1988 when the action was filed in New York. Altai simply asserts that the actions giving rise to the French action "took place prior to February 15, 1990, the date [the French action] was filed" and that they "took place well before [Computer Associates's] United States claims went to trial on March 28, 1990." Appellant's Opening Brief at 23, 34. Absent evidence that the French action is based on conduct by Altai and by FASTER that occurred prior to August 1988, *res judicata* will not bar Computer Associates from pursuing its claims in France.

Altai argues that *res judicata* bars the French action nonetheless, because Computer Associates could have amended its complaint in the United States action to assert its French copyright claims of which it became aware prior to the beginning of trial in the United States. We disagree.

█ For the purposes of *res judicata,* "[t]he scope of litigation is framed by the

complaint at the time it is filed." *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.,* 750 F.2d 731, 739 (9th Cir.1984) (filing of supplemental complaint based on defendant's wrongful conduct occurring after filing of original complaint is not mandatory). The *res judicata* doctrine does not apply to new rights acquired during the action which might have been, but which were not, litigated. *See First Jersey Sec.,* 101 F.3d at 1464; *Los Angeles Branch NAACP,* 750 F.2d at 739. Although a plaintiff may seek leave to file a supplemental pleading to assert a new claim based on actionable conduct which the defendant engaged in after a lawsuit is commenced, *see* Fed. R. Civ. P. 15(c), he is not required to do so, *see First Jersey Sec.,* 101 F.3d at 1464; *see also Manning,* 953 F.2d at 1360 (*res judicata* does not make filing of supplemental pleadings mandatory); *Prime Management Co., Inc. v. Steinegger,* 904 F.2d 811, 816 (2d Cir.1990); *Los Angeles Branch NAACP,* 750 F.2d at 739. Altai was under no obligation to amend its complaint in the United States action, and *res judicata* does not bar litigation of claims arising from transactions which occurred after the United States action was brought.

■ Even if we were to assume that the French suit arose from transactions identical to those in the United States suit, there is a second reason why Altai may not invoke *res judicata* to bar the French action: the New York federal district court in the United States action could not have exercised personal jurisdiction over FASTER, a principal party to the French suit. *Res judicata* will not apply where " 'the initial forum did not have the power to award the full measure of relief sought in the later litigation.' " *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (quoting *Davidson v. Capuano,* 792 F.2d 275, 278 (2d Cir.1986)). Even where a second action arises from some of the same factual circumstances that gave rise to a prior action, *res judicata* is inapplicable if formal jurisdictional or statutory barriers precluded the plaintiff from asserting its claims in the first action. *See id.* (" 'When such formal barriers in fact existed and were operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.' ") (quoting *Restatement (Second) of Judgments* § 26(1)(c) cmt. c (1982)). Such a "formal barrier," the absence of personal jurisdiction over FASTER, precludes application of *res judicata* here.

■ "It has long been the rule that the standard to be applied in determining whether a federal district court has jurisdiction over the person in diversity cases is the law of the state where the court sits." *Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.,* 869 F.2d 34, 40 (2d Cir.1989). The exercise of jurisdiction is proper if the defendant has sufficient contacts to satisfy both the state long arm statute and the Due Process Clause of the Fourteenth Amendment. *See Chaiken v. VV Publ'g Corp.,* No. 95–9301, 119 F.3d 1018, 1025–26 (2d Cir.1997).

■ Altai has failed to show that the New York federal court adjudicating Computer Associates's United States copyright claims would have had jurisdiction over FASTER under New York's long arm statute, N.Y. C.P.L.R. § 302(a). That statute limits the jurisdiction of New York courts over non-domiciliaries to those that "transact[ ] any business" within New York, or "regularly do[ ] or solicit[ ] business, or engage[ ] in any other persistent course of conduct, or derive[ ] substantial revenue in the state." *Id.* There is no evidence in the record that FASTER either transacts business within New York or derives substantial revenue from the state.

Even if personal jurisdiction were allowed by New York's long arm statute, the Due Process Clause limits the exercise of personal jurisdiction to persons having certain "minimum contacts" with the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). A court may exercise personal jurisdiction only over a defendant whose " 'conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' " *Burger King Corp.,* 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *World–Wide Volkswagen*

Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). Essential to the exercise of personal jurisdiction in each case is "'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2184 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)). In this case, Altai has failed to show that FASTER, a French company that distributed software in France, had any contacts with New York, much less "minimum" ones, sufficient to justify the exercise of personal jurisdiction.

On appeal, Altai claims that the essential minimum contacts with the Eastern District of New York exist by virtue of FASTER's 1988 distribution agreement with Altai wherein FASTER agreed to arbitration in Texas. Appellant's Opening Brief at 31–32 n. 20. From the record, we have no indication that this argument was raised in the district court; for that reason, we normally would disregard it on appeal. *See Vintero Corp. v. Corporacion Venezolana de Fomento*, 675 F.2d 513, 515 (2d Cir.1982); *Schwimmer v. Sony Corp.*, 637 F.2d 41, 49 (2d Cir.1980). In any event, whether or not this agreement standing alone would provide the necessary minimum contacts with Texas, it is immaterial to the question of whether personal jurisdiction would be proper in New York.

In conclusion, there are two reasons why *res judicata* does not prevent Computer Associates from maintaining its action based on French copyright claims in France: (i) the infringing conduct which formed the basis of the French action occurred after the filing of the United States action; and (ii) the New York federal district court lacked personal jurisdiction over FASTER. We therefore affirm the district court.

**B.  *Collateral Estoppel***

■   Altai argues, in the alternative, that Computer Associates is collaterally estopped

from claiming that OSCAR 3.5 infringes its French copyright. We disagree.

■   The doctrine of collateral estoppel bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding, if that party had a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits.

*Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir.1992). For collateral estoppel to apply, the issues in each action must be identical, and issues are not identical when the legal standards governing their resolution are significantly different. *See id.; see also* 18 Charles A. Wright, et al., 18 *Federal Practice & Procedure* § 4417, at 165 (2d ed.1981).

On appeal, Altai asserts that the French standard for copyrightability of computer programs is not "significantly different" from the standard applied in the United States because, as under United States copyright law, French law protects expression and not ideas. Appellant's Opening Brief at 38. Such a superficial comparison begs key questions: What constitutes expression or ideas in the context of computer software, to what extent may expression be copied with impunity when it is necessary to the communication of the idea, how much expression is not original with the plaintiff or is in the public domain? Altai's argument is far from sufficient to show that the two copyright standards in France and the United States are "identical" as required for application of collateral estoppel. The Commercial Court arrived at a similar conclusion, refusing Altai's request to give the decision in the United States action dispositive effect. We, therefore, affirm the district court's decision that collateral estoppel does not bar litigation of the French action.

**C.  *Foreign Antisuit Injunction***

■   It is well established that a federal court has the power to enjoin a foreign suit by persons subject to its jurisdiction; however, due regard for principles of inter-

national comity require that this power should be "used sparingly." *China Trade & Dev. Corp. v. M.V. Choong Yong,* 837 F.2d 33, 36 (2d Cir.1987); *United States v. Davis,* 767 F.2d 1025, 1038 (2d Cir.1985). Antisuit injunctions should be "granted only with care and great restraint." *China Trade,* 837 F.2d at 36 (internal quotation marks omitted). Ordinarily when the courts of two sovereigns have *in personam* jurisdiction, one court will not try to restrain proceedings before the other.

In determining whether to enjoin foreign litigation, a court must consider, as a threshold matter, whether (i) the parties to both suits are the same and (ii) resolution of the case before the enjoining court would be dispositive of the action to be enjoined. *Id.*

Altai argues that the *China Trade* factors are inapplicable where a final judgment has been reached in the United States forum. We need not decide whether the *China Trade* factors are inapplicable when a final judgment issues in a United States action because we hold that, in this case, the injunction is not necessary to protect our jurisdiction or the integrity of our judgment. While Altai may experience as vexatious Computer Associate's decision to pursue its rights in France, the French action would in no way affect the decision rendered by a court of the United States. In short, the action in this country involved violations of Computer Associates's United States copyright, and the French action involves violations of Computer Associates's French copyright. We can discern no basis for enjoining Computer Associates from pursuing its French action; moreover, the interests of comity caution against such an injunction.

### III. CONCLUSION

Based on the foregoing, we affirm the decision of the district court denying Altai's motion to enjoin Computer Associates from continuing to litigate its French copyright infringement action against Altai and FASTER in France, based on actions that occurred in France.